# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ALAN DOLMAN, | CASE NO. 3:11CV1052 |
| Petitioner, | JUDGE JAMES S. GWIN |
| v. | MAGISTRATE JUDGE GREG WHITE |
| JOHN COLEMAN, WARDEN, | |
| Defendant. | REPORT AND RECOMMENDATION |

Petitioner, Alan Dolman ("Dolman"), challenges the constitutionality of his conviction in the case of *State v. Dolman*, Williams County Court of Common Pleas Case No. 09-CR-142. Dolman, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on May 23, 2011. On October 25, 2011, Warden John Coleman ("Respondent") filed his Answer/Return of Writ. (Doc. No. 5.) Dolman filed a Traverse on November 18, 2011. (Doc. No. 11.) For reasons set forth in detail below, it is recommended that Dolman's Petition be denied.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Dolman's conviction as follows:

> {¶ 1} On September 23, 2009, the Williams County Grand Jury indicted appellant, Alan D. Dolman, on (1) six counts of photographing a child, who was not his child or ward, in a state of nudity in violation of R.C. 2907.323(A)(1); and (2) five counts of possessing or viewing any material or performance showing a minor, who was not Dolan's child or ward, in a state of nudity in violation of R.C. 2907.323(A)(3). Six of these counts were designated as felonies of the second degree and five counts as felonies of the fifth degree. The remaining two counts in the indictment alleged violations of R.C. 2919.22(B)(5), child endangering by enticing and/or encouraging a child to be photographed for the production of any material that the offender knows is "obscene, is sexually oriented matter, or is

nudity-oriented matter * * *." Both of these charges are felonies of the second degree.

{¶ 2} At appellant's trial, the state of Ohio presented the following evidence material to the offenses set forth above. On May 24, 2009, Officer Gerald Collert of the Montpelier Police Department received a complaint from a group of neighbors who were concerned with the safety of young children who were being given rides by appellant on his moped. As the officer was speaking with the neighbors, a young man, who we shall call D.B. [FN1], came forward and stated that he had something he needed to tell Collert.

> FN1. Any children who were under the age of 18 at the time that the basis for the charges against appellant occurred shall be referenced by only his or her initials.

{¶ 3} D.B. then told the officer that one day he went to visit his neighbors, who had two young children, A.C., a seven-year-old girl, and her little brother, Z.C. The children asked D.B. to take them to a park that was in the neighborhood. On the way to the park, D.B. stopped at home to get his basketball. While they were at the park, they played a game of basketball with appellant, who was the father of one of D.B.'s friends. During the game, Z.C. fell and scraped his knee and arm. Appellant then took the children to his house to take care of the little boy's scrapes. After taking care of the scrapes, the children and appellant went out into his back yard where he had a trampoline and a tree swing.

{¶ 4} Later, they went back into the house where the younger children played video games in the living room while D.B. looked around the house. After he used the bathroom, D.B. went back to the living room, but appellant and A.C. were not there. He asked Z.C., who was still playing video games, where appellant and A.C. were, and the child pointed to a bedroom door in the hallway. When the older boy tried to open the door to that room, it was locked. After "lightly" knocking on the door and receiving no response, D.B. sat in a room nearby. Appellant subsequently left the room. When D.B. went into that room, he saw A.C. dressed in only her underpants and socks. When he asked her what she was doing, A.C. told him that she was trying on costumes. The boy then told A.C. to get dressed, and appellant took them home. According to D.B., the incident occurred approximately two weeks before he spoke to the police officer.

{¶ 5} Based upon the statements made by D.B., Officer Collert began an investigation of appellant. After interviewing A.C., who gave him a more detailed statement of the incident, Collert obtained a search warrant for appellant's residence for the purpose of finding "photographs and videos," computers, digital cameras, and the "costumes and dresses" that appellant allegedly told A.C. to wear that day.

{¶ 6} On May 28, 2009, Collert and two other police officers served the search warrant on appellant. They seized his computer, computer equipment, CDs, DVDs, VHS tapes, three or four digital cameras, a 35 millimeter camera, and three video cameras. They also seized the costumes that A.C. said she wore that day. Officer Collert took photographs of the interior of appellant's home and of the items seized. The subsequent search of appellant's computer files revealed numerous photographs and/or computer images, *e.g.* "Erotica," of naked or scantily clad young girls. Several of the photographs, including those in which she appeared totally nude were of A.W., an 11–year–old girl who was a friend of appellant's son.

{¶ 7} Both A.C. and A.W. testified at appellant's trial. A.C. testified that appellant asked her whether she would like to try on some costumes. He then took her into his daughter's bedroom and locked the door. The young girl tried on six costumes. Then appellant had A.C. pose in just her panties and took photographs of her. Two of these photographs were offered into evidence. Two other "candid" photographs of A.C. putting on her clothes were also offered into evidence.

{¶ 8} In her testimony, A.W. stated that she was a friend of appellant's 12–year–old son, and that she would play with him at appellant's home "almost every day." According to A.W., appellant would have the two children put on the costumes that were in his daughter's room and take photographs of them. Appellant also had an inflatable rubber pool that he would set up in the living room and fill with soapy water. He would then take photographs of A.W. playing in the pool in a "tank top and underwear." When she went to the bathroom to change her clothing after being in the pool, appellant would also go into the bathroom and take photographs of A.W. while she was nude. According to the 11 year old, Dolman told her not to tell anyone about their activities or the photographs. Numerous photographs of A.W. taken by appellant that show her posing in her underwear were entered into evidence. In several other photographs taken by appellant's son, A.W. is shown posing in her underwear with appellant. Two other photographs in which A.W. posed completely naked were also placed into evidence.

{¶ 9} Based upon the foregoing, the jury found appellant guilty on all counts in the indictment. After a presentence investigation was conducted, the trial court held a sentencing hearing and imposed the following sentence on appellant. For the six violations of R.C. 2907.323(A)(1), all felonies of the second degree, the court imposed a sentence of six years in prison for each. For the five violations of R.C. 2907.323(A)(3), all felonies of the fifth degree, the trial court sentenced appellant to 11 months in prison for each. For the two violations of R.C. 2919.22(B)(5), both felonies of the second degree, the court imposed a sentence of six years in prison for each. The court ordered the prison terms to be served consecutive to each other for a total prison term of 52 years and 7 months.

*State v. Dolman*, 2010 WL 4546693, *1-2 (Ohio App. 6th Dist. Nov. 12, 2010) (2010-Ohio-5505).

## II. Procedural History

**A.     Conviction**

On September 23, 2009, a Williams County Grand Jury charged Dolman with six counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance in violation of Ohio Revised Code ("O.R.C.") § 2907.323(A)(1)[1], five counts of Illegal Use of a Minor in Nudity-Oriented

---

[1] O.R.C. § 2907.323(A)(1) specifically provides that no person shall "[p]hotograph any minor who is not the persons' child or ward in a state of nudity; or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity. . . ."

3

Material or Performance in violation of O.R.C. § 2907.323(A)(3),[2] and two counts of Endangering Children in violation of O.R.C. § 2919.22(B)(5).[3] (Doc. No. 5-1, Exh. 1.)

After pleading not guilty, Dolman, through counsel, filed two motions *in limine* requesting the court to prohibit the State from introducing (1) alleged "other acts" evidence of forty-nine erotic pictures and (2) evidence of a prior conviction of Gross Sexual Imposition of a minor. *Id*. at Exhs. 3 & 4, Tr. 6-11. The court denied the motion regarding "other acts" conduct.[4] *Id.* at Exh. 7, Tr. 26.

On January 14, 2010, a jury found Dolman guilty as charged. *Id*. at Exh. 8, Tr. 27. Prior to sentencing, Dolman, through counsel, filed a motion to set aside the jury verdicts and dismiss the indictment as faulty for ". . . failing to set forth punishable offenses by omitting language that the nudity was a lewd exhibition or a graphic focus on the genitals." *Id*. at Exh. 9, Tr. 29. The court denied the motion. *Id*. at Exh. 10, Tr. 55. On February 16, 2010, he was classified as a "Tier II sex offender" and sentenced to an aggregate prison term of 52 years, 7 months. *Id*. at Exh. 12, Tr. 56.

**B.     Direct Appeal**

On March 2, 2010, Dolman, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court") raising eight assignments of error:

1.     The trial court erred by admitting into evidence a judgment entry of Defendant/Appellant's alleged prior conviction.

---

[2] O.R.C. § 2907.323(A)(3) provides that no person shall possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity. . . ."

[3] O.R.C. § 2919.22(B)(5) provides that no person shall "[e]ntice, coerce, permit, encourage, compel, hire, employ, use, or allow the child [under 18] to act, model, or in any other way participate in, or be photographed for, the production, presentation, dissemination, or advertisement of any material or performance that the offender knows or reasonably should know is obscene, is sexually oriented matter, or is nudity-oriented matter."

[4] The Court notes that Exhibit 7 does not address the motion *in limine* regarding the evidence of a prior conviction.

    2.        The trial court erred by admitting into evidence photographs unrelated to the indictments.

    3.        The trial court erred in the definitions in the jury instructions.

    4.        Whether the trial court erred in failing to set aside the jury verdicts and dismiss the indictment due to the failure of the indictment to include the allegations of "lewd" or graphic focus on the genitals.

    5.        Whether the jury lost its way and created a manifest miscarriage of justice by finding that the subject photos showed nudity that is a lewd exhibition or a graphic focus on the genitals.

    6.        Whether the trial court erred in failing to excuse a prejudicial juror for cause and thereby forcing Defendant/Appellant to utilize a preemptory challenge.

    7.        The trial court violated Defendant/Appellant's right against cruel and unusual punishment as guaranteed by the 8th and 14th Amendments of the U.S. Constitution in Article I, Section 9 of the Ohio Constitution by imposing a 52-year sentence when no individual was physically harmed.

    8.        The trial court erred in failing to declare a mistrial upon discovering a juror had fallen asleep.

*Id.* at Exh. 15, Tr. 75, 80.  On November 12, 2010, Dolman's conviction and sentence were affirmed.  *Id*. at Exh. 17, Tr. 239-256.

Dolman, *pro se*, filed a timely Notice of Appeal with the Ohio Supreme Court raising five propositions of law:

    1.        The trial court erred, abused its discretion and deprived appellant if [sic] a fair trial and due process of law by permitting use of a prior conviction and unrelated evidence at trial.

    2.        Appellant was deprived of notice and due process of law by the failure to allege an essential element in the charging instrument.

    3.        Appellant was deprived of a fair trial by an impartial jury and of due process of law by the trial court refusing to give required jury instructions.

    4.        Appellant was deprived of a fair trial by an impartial jury and of due process by the trial court's refusal to excuse an admittedly biased juror who was a police chief.

    5.        A sentence of life in prison without parole for possession of eleven photographs is sufficiently shocking to the conscience to violate the Eighth Amendment.

*Id*. at Exh. 18, Tr. 257; Exh. 19, Tr. 258, 259.  On March 16, 2011, the appeal was dismissed as not involving any substantial constitutional question.  *Id*. at Exh. 21, Tr. 306.

    **C.**        **Ohio App. R. 26(B) – Application to Reopen Appeal**

Meanwhile, on December 14, 2010, Dolman, *pro se*, filed an application to reopen claiming his appellate counsel failed to raise sentencing errors. *Id*. at Exh. 22.  The application was denied. *Id*. at Exh. 24.  Dolman timely appealed this decision to the Ohio Supreme Court, which dismissed the appeal. *Id*. at Exhs. 25, 26, 28.

### D. Federal Habeas Petition

On May 23, 2011, Dolman filed a Petition for Writ of Habeas Corpus asserting seven grounds for relief.  In his Traverse, however, he abandoned all but ground two:

> **GROUND TWO**: Petitioner was deprived of due process of law by the failure to allege an essential element in the indictment.
>
> **Supporting Facts**: The statutory definition of the offense of illegal use of a minor in nudity oriented material or performance includes the essential element of "lewd or graphic focus on the genitals."  This essential element was not alleged in the indictment, thereby violating due process of law.

(Doc. No. 1.)

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.*

6

*Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

Dolman asserts that his due process rights were violated because the indictment, charging him with Illegal Use of a Minor in Nudity-Oriented Material or Performance (O.R.C. §§ 2907.323(A)(1) and 2907.323(A)(3)), lacked the "essential element" of "lewd or graphic focus on the genitals."   (Doc. No. 1 at 6-7; Doc. No. 11 at 2-3.)  Relying on *Osborne v. Ohio*, 495 U.S. 103 (1990) and *State v. Young*, 37 Ohio St.3d 249 (1988), he contends that the State is required to include such language in the indictment in order to provide sufficient notice of the charges. (Doc. No. 11 at 2-3.)

The Respondent asserts that ground two is not cognizable in federal habeas, and, in the alternative, is without merit.  (Doc. No. 5 at 24-26.)  As to cognizability, Respondent contends that there is no federal constitutional right to an indictment.  *Id*. at 24.  Respondent further contends that even if there is such a right, Dolman did not preserve this issue at the appropriate time.  *Id* at 23.  Respondent relies on O.R.C. § 2941.29, which states:

No indictment or information shall be quashed, set aside, or dismissed, or motion to

7

> quash be sustained, or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment or information, unless the objection to such indictment or information, specifically stating the defect claimed, is made prior to the commencement of the trial, **or at such time thereafter as the court permits**.

(Emphasis added).

Shortly after trial, Dolman moved to set aside the verdicts and dismiss the indictment based upon the lack of sufficient notice of the charges. (Doc. No. 5-1 at Exh. 9.) As the State conceded in its response to Dolman's motion, the "issue of whether the photographs showed a 'lewd exhibition' was the most contentious issue at trial, argued by both the prosecution and the defense. . . ." *Id*. at Exh. 10, Tr. 37.) In a one-sentence order, the trial court denied the motion. *Id*. at Exh. 11. It is unclear whether the trial court ruled upon the substantive issue or whether it was denied procedurally. Nonetheless, Dolman did raise the issue on appeal where the substantive issue was addressed.

It is well settled that the federal guarantee of a grand jury indictment does not apply to the states. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio Jun. 14, 2005). In addition, "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Id.* (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976)).

Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id*. "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a

subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

*Hamling v. United States*, 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *accord United States v. McAulife*, 490 F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).

The relevant clearly established Federal law, as determined by the Supreme Court in *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982) and *Osborne*, is that "the First Amendment protects nudity that involves no exploitation of children--as, for example, where a parent innocuously photographs his or her naked infant--but that states may prohibit materials and conduct involving the exploitation of children exemplified, for example, by photographs of children other than the defendant's child that depict lewd exhibitions or a graphic focus on the child's genitals." *O'Connor v. Erwin,* 2008 WL 906060, *10 (S.D. Ohio Mar. 31, 2008); *Mikesell v. Conley*, 51 Fed. Appx. 496, 503 (6th Cir. 2002).

The *Ferber* Court explained: "[w]hile the depiction of nudity, without more is protected expression under the First Amendment, *Erznoznik v. Jacksonville*, 422 U.S. 205, 213 n. 10, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), child pornography is unprotected speech subject to regulation by the states." *Ferber*, 458 U.S. at 765, fn. 18; *O'Connor*, 2008 WL 906060, at *10. The "lewd exhibition of [a child's] genitals" is permissibly prohibited under the First Amendment. *Ferber*, 458 U.S. at 751, 773-74.

In *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), the Supreme

9

Court considered whether O.R.C. § 2907.323(A)(3)[5], which prohibits the possession of "nude"

---

[5]O.R.C. § 2907.323, Illegal Use of a Minor in Nudity-Oriented Material or Performance, provides, in pertinent part, as follows:

(A) No person shall do any of the following:

(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:

(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance;

(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

* * *

(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.

O.R.C. § 2907.323(A).

photographs of minors, was overbroad.  After noting that "depictions of nudity, without more, constitute protected expression," *id*. at 112, the Court concluded that the statute was not overbroad under the First Amendment because the Ohio Supreme Court in *Young* had construed it to prohibit only materials involving "a lewd exhibition or ... a graphic focus on the genitals," when the person depicted was "neither the child nor the ward of the person charged."  *Id*. at 113 (*citing State v. Young*, 37 Ohio St.3d 249, 252, 525 N.E.2d 1363, 1368 (1988)).  By limiting the statute's operation to nudity that involves lewdness or graphic focus on the genitals, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children, causing the statute to "plainly survive[ ] overbreadth scrutiny."  *Osborne*, 495 U.S. at 113-114.

Even though *Young* narrowly construed the definition of nudity, it did not "judicially engraft[ ]" an element onto R.C. 2907.323.  *O'Connor,* 2008 WL 906060, *9.  "[O]nly the legislature, not the judiciary, has the power to engraft or enact additional elements to the offense.  *See* R.C. 2901.03(A), which provides that '[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code.'"  *Id.*

Furthermore, Ohio Crim. R. 7(B) requires that the statement in the indictment be "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."  While *Osborne* may require proof that the "state of nudity" include lewdness or graphic focus on the genitals in order to be constitutional, it does not alter the elements of O.R.C. § 2907.323(A)(1) & (3).  *See O'Connor* at *9.

The state appellate court, applying *Osborne*, concluded that the indictment gave Dolman sufficient notice of the charges:

> {¶ 30} In his Assignment of Error No. IV, appellant claims that the trial court erred in failing to grant his motion to set aside the verdicts in this case and dismiss the indictment for failure to set forth punishable offenses by "omitting language that the nudity was a lewd exhibition or a graphic focus on the genitals." A reading of the indictment in the case under consideration reveals that Counts I through XI, which are based upon R.C. 2907.323(A)(1) or 2907.323(A)(3), of the indictment tracks the language of the cited statutes, but does not contain either of the phrases quoted by appellant.

11

{¶ 31} The purpose of an indictment is to give the accused adequate notice of the crime charged. *State v. Buehner*, 110 Ohio St.3d 403, 853 N.E.2d 1162, 2006–Ohio–4707, ¶ 7. An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id*. at ¶ 9, 853 N.E.2d 1162. As applied to the present case, the indictment cites to both R.C. 2907.323(A)(1) and 2907.323(A)(3) and tracks the statutory language of these charged offenses. Therefore, we are of the opinion that it gave appellant adequate notice of the crimes charged.

{¶ 32} Appellant argues, however, that in *State v. Graves*, 184 Ohio App.3d 39, 919 N.E.2d 753, 2009–Ohio–974, the Fourth District Court of Appeals found that under *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, and *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, an indictment charging a defendant of either or both of the relevant subsections of R.C. 2907.323(A) must contain an allegation of lewd or graphic focus on the genitals. *See, also, State v. Moss* (Apr. 14, 2000), 1st Dist. No. C–990631, 2000 WL 376434 (Wherein the majority also found that *Young* requires an allegation of lewdness or a graphic focus on genitals in order to state an offense under the statute).

{¶ 33} In *Young*, the defendant filed a timely motion to dismiss the indictment, asserting that R.C. 2907.323(A)(1) violated the "constitutional prohibition against vagueness and overbreadth" because, *inter alia*, the term "nudity" in the statute could encompass "morally innocent states of nudity as well as lewd exhibitions." *Id*. at 251, 525 N.E.2d 1363. The Ohio Supreme Court rejected this argument, finding that the "proper purposes [FN2]" exceptions of the statute narrows its prohibition to "the possession or viewing of material or performance of a minor who is in a state of nudity * * * [to] a lewd exhibition or * * *graphic focus on the genitals, and where the person depicted is neither the child or ward of the state." *Id*. at 252, 525 N.E.2d 1363. The *Graves* court interpreted *Young* as engrafting the foregoing language to R.C. 2907.323(A)(1) and (A)(3). *Graves* at ¶ 14. As to *Osborne*, the Fourth District Court of Appeals noted that the while the United States Supreme Court reversed that case on other grounds, it endorsed the "lewd" or "graphic focus on the genitals language" to avoid any issues involving the First Amendment to the Constitution of the United States, specifically noting that although child pornography is a violation of the law, the production of material depicting a child in a state of nudity is protected speech. *Id*. at ¶ 11.

> FN2. Both R.C. 2907.323(A)(1)(a) and (b) and 2907.323(A)(1)(a) and (b) allow the creation, transfer, production, and direction of photographs of a minor in a state of nudity who is not the person's child or ward for, among other things, scientific or educational purposes, and if the parents, guardian, or custodian of the minor child consent to the photographing of the minor child or ward for such purposes.

{¶ 34} We do not agree with the Fourth District Court of Appeals' application of *Young* and *Osbourne*. Nor do we agree with the majority in the First District Court of Appeals' decision in *Moss*. In *State v. O'Connor*, 4th Dist. No. CA2001–08–195, 2002–Ohio–4122, *O'Connor* asked the Twelfth District Court of Appeals to apply *Moss* and determine that the allegations in the indictment were, in light of the Ohio Supreme Court's construction of that statute in *Young*, insufficient to state a violation of R.C. 2907.323(A)(1). *Id*. at ¶ 28, 525 N.E.2d 1363. The *O'Connor* court found, however, that *Moss's* interpretation of *Young* was invalid because "it is only the legislature, not the judiciary," that "has the power to engraft or enact additional

12

elements" of an offense. *Id*. at ¶ 30, 525 N.E.2d 1363. *See, also, Moss*, Hildebrandt, P.J., dissenting. Thus, the Twelfth Appellate District concluded that, under Crim.R. 7(B), the indictment must charge the offense either in the words of the applicable section of the statute or "'in words sufficient to give the defendant notice of all the *elements* of the offense with which the defendant is charged.'" (Emphasis in the original.) We agree with the rationale and holding in *O'Connor*; therefore, we find appellant's Assignment of Error No. IV not well-taken.

*State v. Dolman,* 2010 WL 4546693, *5 -6 (Ohio App. 6th Dist. Nov. 12, 2010) (2010-Ohio-5505).

The indictment charged Dolman as follows:

[O.R.C. § 2907.323(A)(1), Counts One through Six] Did knowingly photograph a minor, to-wit: [the minor], who is not Alan D. Dolman's child or ward, in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, in photograph identified as [one through six], all against the peace and dignity of the State of Ohio.

[O.R.C. § 2907.323(A)(3), Counts Seven through Eleven] Did knowingly possess or view any material or performance that shows a minor who is not Alan D. Dolman's child or ward, in a state of nudity, to-wit: a minor identified in photograph identified as [seven through eleven], all against the peace and dignity of the State of Ohio.

(Doc. No. 5-1, Exh. 1.)

Applying *Young* and *Osborne*, the state appellate court found no constitutional violation as the indictment was "sufficient to give the defendant notice of all the elements of the offense ...." *Dolman*, 2010-Ohio-5505 at ¶ 34.

Although there is a conflict in the state appellate courts regarding the application of *Young* and *Osborne*, it is not this Court's province to reconcile this conflict. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state.") Simply because the first and fourth district state courts of appeal might have reached a different conclusion does not render the decision of the sixth district state appellate court in this case unreasonable or contrary to clearly established law.[6]

---

[6] Presumably, the indictments in *Young* and *Osborne* did not include "lewd" allegations. Also, *Osborne* was reversed to ensure that his "conviction stemmed from a finding that the State had proved each of the elements of § 2907.323(A)(3)." *Osborne*, 495 U.S. at 126. The *Osborne* Court found that the jury had not been instructed that the State must prove "scienter and that the defendant possessed material depicting a lewd exhibition or a graphic focus on genitals." *Id*. at

13

### IV. Conclusion

For the foregoing reasons, it is recommended that Dolman's Petition be denied.

s/ Greg White
United States Magistrate Judge

Date: May 30, 2012

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

123. In the instant matter, Dolman does not object to the jury instructions, but to a defective indictment. Upon a review of the trial transcript, the jury instructions defined the elements of the statute, including the definition of "lewd exhibition." (Doc. No. 6-2, Tr. 135-137.)