UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
ALAN DOLMAN,                    :    CASE NO. 3:11-CV-01052
                                                :
            Petitioner,              :
                                                :
vs.                                         :    ORDER & OPINION
                                                :    [Resolving Docs. No. 1, 12, 15.]
JOHN COLEMAN, Warden,     :
                                                :
            Respondent.            :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Alan Dolman files a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Dolman seeks relief from convictions in Ohio state court for child pornography offenses and his concomitant sentence of fifty-two years and seven months in prison.[2] Respondent, Warden John Coleman opposes the petition.[3] On June 14, 2012, Magistrate Judge Greg White filed a Report and Recommendation that recommended the Court deny Dolman's petition.[4] Dolman objects to the Magistrate Judge's Report and Recommendation because he says that the Magistrate Judge did not apply the correct legal standard.[5] For the reasons provided below, the Court **ADOPTS** the

---

[1] [Doc. 1.]

[2] [Doc. 1.]

[3] [Doc. 5.]

[4] [Doc. 12.]

[5] [Doc. 15.]

-1-

Case No. 3:11-CV-01052
Gwin, J.

Magistrate Judge's Report and Recommendation and **DENIES** Dolman's petition for a writ of habeas corpus.

## I.

The Ohio Court of Appeals summarized the facts underlying this case:

{¶1} On September 23, 2009, the Williams County Grand Jury indicted appellant, Alan D. Dolman, on (1) six counts of photographing a child, who was not his child or ward, in a state of nudity in violation of R.C. 2907.323(A)(1); and (2) five counts of possessing or viewing any material or performance showing a minor, who was not Dolan's child or ward, in a state of nudity in violation of R.C. 2907.323(A)(3). Six of these counts were designated as felonies of the second degree and five counts as felonies of the fifth degree. The remaining two counts in the indictment alleged violations of R.C. 2919.22(B)(5), child endangering by enticing and/or encouraging a child to be photographed for the production of any material that the offender knows is "obscene, is sexually oriented matter, or is nudity-oriented matter * * *." Both of these charges are felonies of the second degree.

{¶2} At appellant's trial, the state of Ohio presented the following evidence material to the offenses set forth above. On May 24, 2009, Officer Gerald Collert of the Montpelier Police Department received a complaint from a group of neighbors who were concerned with the safety of young children who were being given rides by appellant on his moped. As the officer was speaking with the neighbors, a young man, who we shall call D.B., came forward and stated that he had something he needed to tell Collert.

{¶3} D.B. then told the officer that one day he went to visit his neighbors, who had two young children, A.C., a seven-year-old girl, and her little brother, Z.C. The children asked D.B. to take them to a park that was in the neighborhood. On the way to the park, D.B. stopped at home to get his basketball. While they were at the park, they played a game of basketball with appellant, who was the father of one of D.B.'s friends. During the game, Z.C. fell and scraped his knee and arm. Appellant then took the children to his house to take care of the little boy's scrapes. After taking care of the scrapes, the children and appellant went out into his back yard where he had a trampoline and a tree swing.

{¶4} Later, they went back into the house where the younger children played video games in the living room while D.B. looked around the house. After he used the bathroom, D.B. went back to the living room, but appellant and A.C. were not there. He asked Z.C., who was still playing video games, where appellant and A.C. were, and the child pointed to a bedroom door in the hallway. When the older boy tried to

Case No. 3:11-CV-01052
Gwin, J.

open the door to that room, it was locked. After "lightly" knocking on the door and receiving no response, D.B. sat in a room nearby. Appellant subsequently left the room. When D.B. went into that room, he saw A.C. dressed in only her underpants and socks. When he asked her what she was doing, A.C. told him that she was trying on costumes. The boy then told A.C. to get dressed, and appellant took them home. According to D.B., the incident occurred approximately two weeks before he spoke to the police officer.

{¶ 5} Based upon the statements made by D.B., Officer Collert began an investigation of appellant. After interviewing A.C., who gave him a more detailed statement of the incident, Collert obtained a search warrant for appellant's residence for the purpose of finding "photographs and videos," computers, digital cameras, and the "costumes and dresses" that appellant allegedly told A.C. to wear that day.

{¶ 6} On May 28, 2009, Collert and two other police officers served the search warrant on appellant. They seized his computer, computer equipment, CDs, DVDs, VHS tapes, three or four digital cameras, a 35 millimeter camera, and three video cameras. They also seized the costumes that A.C. said she wore that day. Officer Collert took photographs of the interior of appellant's home and of the items seized. The subsequent search of appellant's computer files revealed numerous photographs and/or computer images, e.g. "Erotica," of naked or scantily clad young girls. Several of the photographs, including those in which she appeared totally nude were of A.W., an 11–year–old girl who was a friend of appellant's son.

{¶ 7} Both A.C. and A.W. testified at appellant's trial. A.C. testified that appellant asked her whether she would like to try on some costumes. He then took her into his daughter's bedroom and locked the door. The young girl tried on six costumes. Then appellant had A.C. pose in just her panties and took photographs of her. Two of these photographs were offered into evidence. Two other "candid" photographs of A.C. putting on her clothes were also offered into evidence.

{¶ 8} In her testimony, A.W. stated that she was a friend of appellant's 12–year–old son, and that she would play with him at appellant's home "almost every day." According to A.W., appellant would have the two children put on the costumes that were in his daughter's room and take photographs of them. Appellant also had an inflatable rubber pool that he would set up in the living room and fill with soapy water. He would then take photographs of A.W. playing in the pool in a "tank top and underwear." When she went to the bathroom to change her clothing after being in the pool, appellant would also go into the bathroom and take photographs of A.W. while she was nude. According to the 11 year old, Dolman told her not to tell anyone about their activities or the photographs. Numerous photographs of A.W. taken by appellant that show her posing in her underwear were entered into evidence. In several other photographs taken by appellant's son, A.W. is shown posing in her

-3-

Case No. 3:11-CV-01052
Gwin, J.

underwear with appellant. Two other photographs in which A.W. posed completely naked were also placed into evidence.

{¶ 9} Based upon the foregoing, the jury found appellant guilty on all counts in the indictment. After a presentence investigation was conducted, the trial court held a sentencing hearing and imposed the following sentence on appellant. For the six violations of R.C. 2907.323(A)(1), all felonies of the second degree, the court imposed a sentence of six years in prison for each. For the five violations of R.C. 2907.323(A)(3), all felonies of the fifth degree, the trial court sentenced appellant to 11 months in prison for each. For the two violations of R.C. 2919.22(B)(5), both felonies of the second degree, the court imposed a sentence of six years in prison for each. The court ordered the prison terms to be served consecutive to each other for a total prison term of 52 years and 7 months.[6]

The Ohio Court of Appeals affirmed Dolman's convictions on direct appeal.[7] Dolman now petitions this Court for a writ of habeas corpus. While Dolman initially asserted six claims for relief, with his traverse, he abandons all but one.[8] Dolman says that the indictment charging him was unconstitutionally flawed because it did not include a what he says is a judicially engrafted scienter requirement, and, therefore, failed to set out the elements of the offense.[9] The Warden says that Dolman has procedurally defaulted this issue by failing to present this issue before or during trial and that, in any event, his indictment was not unconstitutionally deficient.[10]

In an unusually thorough and considered Report and Recommendation, the Magistrate Judge recommends that the indictment was constitutionally sufficient.[11] The Magistrate Judge says that

---

[6] *State v. Dolman*, 2010-Ohio-5505 (Ohio Ct. App. Nov. 12, 2010) (footnote omitted).

[7] *Id.* at *9.

[8] [Doc. 11.]

[9] [Doc. 11 at 2.]

[10] [Doc. 5 at 22-25.]

[11] [Doc. 11 at 12.]

Case No. 3:11-CV-01052
Gwin, J.

Ohio's appellate courts are currently split on whether judicial limitations on the statute under which he was charged actually constitute additional elements, but that this Court should defer to the determination made by the Court of Appeals in Dolman's case—that they are not.[12] Dolman objects that the narrowing constructions recognized by Ohio Supreme Court and the United States Supreme Court do in fact constitute elements, and, thus, he was entitled to notice.[13]

## II.

### A. Federal Magistrates Act

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection.[14]

### B. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[15] governs a federal court's review of a state prisoner's habeas corpus petition. AEDPA limits federal review to only those claims in which a petitioner contends that he is in custody in violation of the Constitution, laws, or treaties of the United States.[16] And a federal court cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

---

[12] [Doc. 12 at 11.]

[13] [Doc. 15.]

[14] 28 U.S.C. § 636(b)(1).

[15] Pub. L. No. 104-132, 110 Stat. 1214 (1996); codified at 28 U.S.C. § 2254.

[16] 28 U.S.C. § 2254(a).

Case No. 3:11-CV-01052
Gwin, J.

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[17]

To justify any grant of habeas relief, "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."[18] Furthermore,

> under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[19]

The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still should not grant relief unless it also finds that the state court ruling was unreasonable.[20]

### III.

**A. Procedural Default**

While Dolman may have failed to object to the indictment at trial, the state appellate court considered this claim on the merits. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been

---

[17] 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

[18] *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[19] *Williams*, 529 U.S. at 412-13.

[20] *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

Case No. 3:11-CV-01052
Gwin, J.

available."[21] The state appellate court laid out the relevant constitutional standard and found that the indictment gave Dolman sufficient notice of the charges against him:

> {¶ 31} The purpose of an indictment is to give the accused adequate notice of the crime charged. *State v. Buehner*, 110 Ohio St.3d 403, 853 N.E.2d 1162, 2006–Ohio–4707, ¶ 7. An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant of the charge, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id*. at ¶ 9, 853 N.E.2d 1162. As applied to the present case, the indictment cites to both R.C. 2907.323(A)(1) and 2907.323(A)(3) and tracks the statutory language of these charged offenses. Therefore, we are of the opinion that it gave appellant adequate notice of the crimes charged.

Because the Ohio appellate court considered Dolman's notice argument, its consideration removes any procedural bar to habeas review of this claim. And because the Ohio appellate court reached the merits of this claim, AEDPA deference applies on review.

**B. Merits**

In *State v. Young*, the Ohio Supreme Court construed Ohio Revised Code § 2907.323, under which Dolman was indicted, to "prohibit[] the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged."[22] Dolman says that this construction created an element not included in the statutory language—lewd or graphic focus on the genitals—that should have been included in his indictment. [23] The Warden says that a defect in the indictment cannot serve as the basis for habeas

---

[21] *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *see also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("[T]he district court incorrectly determined that habeas claim forty-two was procedurally defaulted, because the state courts adjudicated this claim on the merits on post-conviction review.").

[22] 525 N.E.2d 1363, 1368 (1988).

[23] [Doc. 11 at 2.]

Case No. 3:11-CV-01052
Gwin, J.

relief unless it failed to give Dolman notice of the charges against him~~, which this indictment did not.~~[24]

Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[25] But contrary to Dolman's assertion, the Sixth Circuit Court of Appeals has interpreted this standard so as not to *require* that the grand jury indictment include every element of the offense charged.[26] That is, inclusion of all the elements of the offense charged is a sufficient, but not necessary condition of an indictment. Thus, even assuming arguendo that lewd or graphic focus on the genitals is a judicially engrafted element of the offense, the indictment is not *per se* deficient for failing to allege every element fails. Instead, Dolman must show that the indictment failed to provide sufficient notice of the charge against which he had to defend. He does not.

Furthermore, "[a] constitutionally deficient indictment is subject to harmless-error review."[27] Thus, even assuming *arguendo* that Dolman had been correct that his indictment was *per se* deficient for failing to include *Young*'s limiting construction of the statute, he would need to show that any failure to included this narrowing requirement in the indictment hampered his defense. Dolman

---

[24] [Doc. 5 at 24.]

[25] *Hamling v. United States*, 418 U.S. 87, 117 (1974).

[26] *See Williams v. Haviland*, 467 F.3d 527, 533 (6th Cir. 2006) (right to a jury determination on all elements applies only to petit jury under Sixth Amendment and not to grand jury under Fifth Amendment).

[27] *Id.* at 535; *see also Biros v. Bagley*, 422 F.3d 379, 388 (6th Cir. 2005) (failure to specify principal offender status in indictment for capital murder were harmless error because "[i]t is clear that the erroneous indictment and jury instructions at issue in the present case had no such effect or influence on the jury's verdict.")

-8-

Case No. 3:11-CV-01052
Gwin, J.

again does not so argue. Nor could he plausibly do so. During opening statements, the prosecutor explained to the jury:

> One of the issues here is going to be the element of nudity. You're going to see these photographs. You're going to see that they depict children without clothes on. But the law is going to require you to find something a little bit more. It's going to require that you find th[at] the nudity that's being displayed in these images constitutes a lewd exhibition or involves a graphic focus on the genitalia. And in order to do that you can use your common sense. You can look at these photographs. You can decide your mind if you think these are lewd exhibitions.[28]

Dolman's counsel also addressed the narrowing construction in his opening statement:

> That word nudity has a very specific definition when it comes to these types of charges. You' ll see in these photos images of apparent minors partially clothed and unclothed. But that won't be enough to establish that these images depict nudity. Let me say that again. When you see these photos and your see partial clothing and no clothing, that's not enough to establish nudity. Okay? In order for the prosecution to prove these images depict a minor in a state of nudity, not only will he have to present these images showing breast, public [sic] area, genitalia or buttocks, but these images must also on top of that reflect a lewd exhibition or a graphic focus on the genitalia. All right? The prosecution will not and cannot present that type evidence to you cause it just doesn't exist.

These opening statements show that both the prosecution and Dolman were aware that the Ohio Supreme Court's narrowing construction would be a significant issue in the case. Dolman was prepared to mount a defense on the first day of trial. Thus, the indictment fulfilled its essential function.

### IV. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Report and Recommendation of Magistrate Judge White and **DENIES** Petitioner Dolman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

---

[28][Doc. 6-1 at 156.]

Case No. 3:11-CV-01052
Gwin, J.

Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that no basis exists upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b)

IT IS SO ORDERED.


Dated: June 5, 2013          s/ *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE